## 10174

### CUDD v. RODGERS.

#### (98 S. E. 796.)

1. PLEADING—CONCLUSIONS OF LAW—ESTOPPEL.—An allegation of the answer, in a suit for the possession of an automobile, that the conduct of the plaintiff in impliedly permitting his mortgagor to sell the car amounted to estoppel, is immaterial, and a mere legal conclusion.

2. CHATTEL MORTGAGES—TRANSFER OF PROPERTY BY MORTGAGOR—CONSENT OF MORTGAGEE TO SALE.—One who loans an automobile dealer money with which to buy cars for resale, and takes a mortgage on the cars as security, in the absence of a stipulation to the contrary, impliedly consents to the sale of any such automobile to any buyer thereof, and cannot claim a lien as against such buyer, regardless of whether the buyer knows of the mortgage or not.

3. CHATTEL MORTGAGES—ACTION AGAINST THIRD PARTY FOR POSSESSION—· QUESTIONS FOR JURY.—Whether the holder of a mortgage upon an automobile authorized his mortgagor to sell it *held*, under the evi· dence, a question for the jury.

Before SEASE, J., Spartanburg, Summer term, 1918 Affirmed.

Action by J. N. Cudd against J. W. Rogers. From a judgment for defendant, plaintiff appeals.

*Messrs. Carson, Boyd & Tinsley,* for appellant, cite: *As to the law of mortgagee's consent to sale of mortgaged property:* 33 S. C. 451 (474); 75 S. C. 201 (207); 45 S. C. 189; 20 S. C. (17); 51 S. C. (42); 77 S. C. 426; 13 S. C. 355; 48 S. C. 226; 36 S. C. 92; 2 Story 630; 43 S. C. 46; 104 S. C. 339.

· *Messrs. Sanders & DePass* and *C. M. Drummond,* for respondent, cite: *As to the law applicable to this case:* 15 S. C. 88; 43 L. R. A. (N. S.) 302; 6 McLean (U. S.) 390.

March 22, 1919.

The opinion of the Court was delivered by Mr. Justice Gage.

Action to recover the possession of an automobile. There are pending several actions of a like character as this, and dependent upon the decision of this one. The defendant had a verdict, and from the judgment thereon the plaintiff has appealed here.

These are the circumstances of the transaction: Cudd is a citizen of substance at Spartanburg; Johnston is a vendor of cars. Johnston had no money. Johnston purchased six cars, and when the cars arrived at Spartanburg Cudd loaned Johnston the money to pay the drafts drawn against them. In order to secure himself from loss, Cudd took from Johnston a mortgage on the cars. Johnston's practice was to sell the cars, and he sold one to Crimm, and from that person Rogers bought the car.

The defense, *inter alia,* was:

"That the plaintiff authorized the sale and disposal of the said automobile to the defendant, or to any one else that it could be sold to, and, therefore, plaintiff has no claim over said car, and is estopped from asserting his lien."

That allegation makes the real issue in the case; for the appellant's brief declares that: "The issue in this appeal is on the law of mortgagee's consent to sale of mortgaged property, and the exceptions are to the Court's rulings on that issue, in charge and on motion for new trial."

Thereabout the Court charged the jury in these words:

"Therefore, gentlemen, I charge you this: That if the mortgagee, Mr. Cudd, consented for the mortgagor, W. J. Johnston, to dispose of and sell the automobiles covered by this mortgage, and if Rogers bought the automobile through

Johnston, or those acting for W. J. Johnston, then Rogers gets a good title to the automobile. If you find that Mr. Cudd consented to the sale of these automobiles, or to the sale of any one of them, because all of them are in the same condition—what applies to one applies to all, because the condition of the mortgage is the same as to all. If Mr. Cudd consented, either before he took the mortgage or after, that Johnston could sell the property, and in the course of business Johnston did sell the property, a good and complete title, and is entitled to keep the automobile; but the defendant must prove by the preponderance of the evidence, by the greater weight of the evidence, not beyond a reasonable doubt, and not necessarily by the greater number of witnesses, but by the greater weight of the evidence, that Mr. Cudd did so consent for Mr. Johnston to sell."

And thereabout the Court refused to charge the jury, at the plaintiff's request, these words:

"I will define to you the issue for your consideration as to the consent of plaintiff to a sale and the release of this automobile from the mortgage. It is this: Did the plaintiff tell the defendant or his predecessors in possession of the automobile that he would not claim the same under his mortgage, or was his conduct toward the defendant or his predecessors in title such as would lead an ordinary prudent man to the belief that he had released the automobile from his mortgage? And you will leave out of consideration anything that Cudd told anybody else, unless it was carried to the defendant or his predecessors in possession before they purchased the car; and you will also disregard anything that anybody other than Cudd or his agent may have told the defendant or his predecessors in possession."

There are eight exceptions, but the brief and the argument at the bar concerned only the issue which arises out of the above charge and refusal to charge.

It is true the before quoted allegation of the answer, after describing the conduct of Cudd which is set up to defeat his

lien, defines that conduct as estoppel. But that is immaterial. The substantial thing is, What did Cudd do? and not what the legal terminology of the act is. The allegation is that Cudd authorized the sale of the automobile to the defendant or to any one else that it could be sold to; the rest of the allegation is a legal conclusion, and it had as well not been recited.

But, if Cudd did so authorize the sale, then he waived his right to claim lien upon the thing sold. Waiver and estoppel are close akin; but their likes and unlikes are not now material. The instant conduct more favors waiver than estoppel; but the conduct is effective without any nomenclature.

No argument is needed to prove that if a mortgagee permits his mortgagor to engage in trade, and to sell the incumbered property to whoever comes to buy, then the buyer takes his goods free from the lien of the mortgage. The charge only stated so much, but in different words.

Indeed, appellant's counsel admitted at the bar that so much was true; his contention was that the testimony did not make such a case. That, though, was a matter for the jury under all the circumstances of the transaction. And in the case stated it is immaterial whether the buyer knew of the existence of the mortgage and relied on the mortgagee's implied consent to the sale.

The mortgage lien is lost, because the lienee consents to a transaction betwixt the lienor and the buying public which implies the lienee's consent to the transaction and consent to the loss of the lien. And the consent by the mortgagee to a sale by the mortgagor to the buying public may be imputed to the mortgagee, without the inference that to conclude otherwise would operate as a fraud on the buyer.

Fraud involves evil intent. In the case supposed a sale by the mortgagor may have been properly intended by the mortgagee. Indeed, it is not uncommon practice for a mortgagee to expressly agree in the mortgage instrument

itself that sales by the mortgagee may be had to the public. See *Marshall v. Crawford,* 45 S. C. 189, 22 S. E. 792, cited by the appellant, and numerous other cases.

In such instances the incumbered property is, as it were. in a state of fluid; all the circumstances indicate that the mortgagor and mortgagee intended that it should move out into the channels of trade. The only way such a mortgagor can get his money is from the proceeds of sale of the incumbered property. The mortgagee in such cases consents to the sale, and trusts to the debtor to apply the proceeds thereof to the mortgage debt.

The judgment is affirmed.

Messrs. Justices Hydrick, ·Watts and Fraser concur.

Mr. Chief Justice Gary did not sit.