## NICHOLS v. BOGDA MOTORS, INC.

[No. 17,600. Filed March 18, 1948.]

*Newberger, Simon and Kahn, Alex L. Ash and Owen S. Boling,* all of Indianapolis, attorneys for appellant.

*Joseph and Dann,* of Indianapolis, attorneys for appellee.

DRAPER, C. J.—Sometime before December 16, 1944, the department of state of the state of Michigan issued to "Ray Kennedy or Minnie Kennedy, either or survivor" a certificate of title covering a Chrysler automobile and showing ownership in them free of lien or encumbrance. On December 16, 1944, to secure a loan of $1036.68, Kennedy and wife executed to the Citizens State Bank of Clare, Michigan, a chattel mortgage on the car which mortgage was, the same day, duly filed for record in the proper office of the county in which the mortgagors resided and the car was located. Thereafter, both the car and the certificate of title remained in the possession of the mortgagors with the consent and approval of the bank.

On February 27, 1945, Ray Kennedy sold the car

to Bogda Motors, Inc., in Indianapolis, Indiana, for $1,235. He delivered the car to the purchaser and executed to it an assignment of the certificate of title which still showed clear title in himself or wife, either or survivor. The purchaser paid the full value of the car and had no actual knowledge of the existence of the mortgage. The mortgagee had never consented to or known of the removal of the car from the state of Michigan and did not know of or consent to said sale.

The mortgage provided, among other things, that if the mortgagors should sell, assign, encumber or dispose of said vehicle or the certificate of title thereto or remove the vehicle from the state of Michigan, the mortgagee might declare the entire amount remaining unpaid to be due and payable forthwith and it should thereupon be lawful for said mortgagee to take possession of said vehicle without demand wherever it might be found, and sell and dispose of same to make the debt and costs of taking and sale.

Michigan law provides for the issuance of certificates of title for motor vehicles by the secretary of state and provides that "Any lien made subsequently (to original issue) where ownership does not change, shall become a part of the certificate of title by filing with the secretary of state, of an affidavit of the mortgagee that said lien has been placed upon the vehicles described in said certificate of title, and thereupon a new certificate of title shall be issued . . ." (Comp. Laws Mich., 1929, § 4659 as amended.)

The bank never executed and filed the affidavit contemplated by the statute and no new certificate was ever issued.

The appellant Nichols, who stands in the shoes of the bank, filed this action to replevin the vehicle from Bogda Motors, Inc. From an adverse judgment he ap-

peals. The question presented is whether under the circumstances the chattel mortgage is valid as against Bogda Motors, Inc., the purchaser.

The parties agree that a chattel mortgage, if valid and properly executed and recorded according to the law of the state where the mortgage is executed and the property is located, will be held valid even as against creditors and purchasers in good faith in another state to which the property is removed by the mortgagor without the knowledge or consent of the mortgagee, unless such would contravene the statute or settled law or policy of the forum. 14 C. J. S. 607, § 15; and see *Cable Co.* v. *McElhoe* (1915), 58 Ind. App. 637, 108 N. E. 790, and *The Ames Iron Works* v. *Warren* (1881), 76 Ind. 512.

Prior to 1921 it was next to impossible for the prospective purchaser of a motor vehicle in this state to discover, with any degree of certainty, who had title to it and whether the title was clear or encumbered. The consequent situation was intolerable and resulted in the enactment of ch. 265, Acts 1921 (§ 47-301 *et seq.*, Burns' 1940 Replacement) which has to do with certificates of title to motor vehicles. Comparable laws have been enacted in Michigan. Comp. Laws of Michigan, 1929, §§ 4658-4669. The purpose of the Act is apparent. This court has said it was enacted for the protection of the owner of motor vehicles, of those holding liens thereon and of the public. *Guaranty Discount Corp.* v. *Bowers* (1932), 94 Ind. App. 373, 158 N. E. 231.

Such certificates do not *convey* title and they are not conclusive proof of title in him who is therein designated as the owner. *Meskiman* v. *Adams* (1925), 83 Ind. App. 447, 149 N. E. 93. They are, however, evidence of title upon which purchasers

and others interested have come to put great reliance.

Nevertheless, questions of priority have since arisen, and this court has had occasion to consider the rights of parties in situations somewhat similar to that in which these parties find themselves. See *Guaranty Discount Corp.* v. *Bowers, supra,* and *LaPorte Discount Corp.* v. *Bessinger* (1930), 91 Ind. App. 635, 171 N. E. 323. No chattel mortgage was involved in either of those cases. Neither transaction crossed state lines. In each of them the contest was waged between the assignee of a conditional sales contract not of record and a subsequent innocent purchaser in the ordinary course of retail trade.

But in each of those cases this court applied the equitable doctrine that where one of two innocent parties must suffer a loss, it must be borne by ■ him whose act or omission made the loss possible. Our decision in each was largely influenced by the fact that the assignees of the conditional sale contracts in those cases had failed to comply or require compliance with the provisions of the act concerning certificates of title, when such would have afforded protection both to such assignee and to subsequent innocent purchasers of the vehicle.

We do not believe those cases are decisive of the question presented here, but we do think they declare the settled policy of this state to be that one holding ■ a lien upon a motor vehicle must, insofar as he can reasonably do so, protect himself and others thereafter dealing in good faith, by complying and requiring compliance with the provisions of applicable laws concerning certificates of title to motor vehicles.

It is true the mortgagor in this case had no right to bring the vehicle to Indiana without the consent of the mortgagee, and in so doing he violated the crim-

inal law of the state of Michigan. But the bank must have known that he might do so, and that he might attempt to dispose of the car by sale. It must also have known that a certificate issued by the secretary of state of the state of Michigan showing clear title in the person offering the vehicle for sale might mislead a prospective purchaser. Yet the bank did not take the simple and inexpensive steps open to it under the law of Michigan for its own protection and the protection of others. Had it done so, neither party would have lost.

It is claimed that under the law of Michigan compliance with the general laws concerning the filing of chattel mortgages affords to the mortgagee full protection against subsequent purchasers without compliance with their motor vehicle title act, and we are urged to so hold. We need not determine the accuracy of that assertion. Uniformity in the law is desirable and comity commendable. We do not refuse to recognize the validity of a chattel mortgage executed and recorded in the state of Michigan but not recorded in the state of Indiana. Nor would we hestitate to enforce it in a proper case. We must however, in the light of the established policy of this state and universally recognized principles of equity, hold that as between the parties here, the appellee has the superior title.

The appellant leans heavily on *General Motors Acceptance Corporation* v. *Nuss* (1940), 195 La. 209, 196 So. 323 and *Metro-Plan, Inc.* v. *Kotcher-Turner, Inc.* (1941), 296 Mich. 400, 296 N. W. 304, to produce a different result. The Louisiana case involved an automobile upon which a mortgage was placed and duly recorded in the state of Missouri. It was later, without the knoweldge or consent of the mortgagee, taken to

Louisiana where it was sold to an innocent purchaser. In a contest involving priority the purchaser defended upon the ground that his rights were not affected by a mortgage executed and recorded in the state of Missouri, of which he had no knowledge and which was not re-recorded in the state of Louisana. Under the facts as stated in the opinion all parties with whom the court was dealing were innocent parties. The equities were equal. The holder of the interest prior in time was therefore prior in right and the court held, as we would hold on those facts, that the mortgage was good and valid in the state of Louisiana and that the rights of the mortgagee were superior. ...

In the Michigan case one Maestre mortgaged a car in the state of New York. The mortgage was duly recorded there but was not recorded in Michigan. He later traded the car to a dealer in Detroit, Michigan, and received $450 in cash and a due bill for $450 to be applied on the purchase of a new model which was not yet on the market. The dealer had no knowledge of the mortgage. Maestre defaulted and the mortgagee located the car and brought an action in conversion against the dealer. The trial court ruled that the dealer was not a bona fide purchaser and also observed that the dealer had possibly relied too greatly on Michigan law which gives no extra-territorial effect to foreign chattel mortgages.

The case was affirmed by a divided court. Justice Boyles and three others voted to affirm on the ground that the dealer was not a bona fide purchaser. Justice Butzel and three others assumed for the purposes of the case that the dealer was a bona fide purchaser, and voted to affirm on the ground that the lien of the mortgage was not lost by a failure to re-record it in Michi-

gan when the property was taken there without the knowledge or consent of the mortgagee.

It is significant that the New York certificate of title *did not require a showing as to liens,* and the mortgagee therefore could not be chargeable with any failure to take such steps as would make his lien show on the certificate. It is also significant that Justice Butzel in his opinion said: "While an occasional bona fide purchaser must suffer, under the majority rule, we do a greater good in protecting the financing of chattels *where the mortgagee has done everything in his power to protect his security. . . ."* (Our Emphasis.)

The judgment is affirmed.

NOTE.—Reported in 77 N. E. 2d 905.